97 F.3d 1459
 Pens. Plan Guide P 23928O
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Richard JORDAN, Plaintiff-Appellant,
v.
THRIFTY CORPORATION, a California corporation; Thrifty
Corporation Savings and Profit Sharing Plan, an
ERISA-regulated stock ownership plan; Lloyd A. Levitin;
Daniel A. Seigel; Leonard H. Straus; James R. Ukropina;
and Willis B. Wood Jr., as individuals and Trustees of the
Thrifty Corporation Savings and Profit Sharing Plan,
Defendants-Appellees.
 
 1
 No. 95-55422.
 
 
 2
 United States Court of Appeals, Ninth Circuit.
 
 Argued and Submitted Aug. 5, 1996.
Decided Sept. 17, 1996.
 
 3
 Before: FLETCHER and TASHIMA, Circuit Judges, and RESTANI, Court of International Trade Judge.*
 
 
 4
 MEMORANDUM**
 
 
 5
 Plaintiff-appellant Richard Jordan ("Jordan") appeals from the district court's dismissal of his action to recover benefits from an Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., Employee Benefit Plan ("Plan"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 6
 Defendant-appellee Thrifty Corporation ("Thrifty") employed Jordan from 1954 until 1978. During that time, Jordan was a participant in Thrifty's ERISA-regulated pension Plan. When Jordan retired from Thrifty, on September 1, 1978, he had $44,822.30 vested in his profit sharing account.
 
 
 7
 At the time of Jordan's retirement, the profit sharing account was governed by the Plan Restatement of 1976. The 1976 Plan required the administrators to distribute Jordan's vested benefits no later than 60 days after the close of the fiscal year in which separation from service took place. Jordan's distribution could have been through either a qualified joint and survivor annuity with payments to begin at age 65 or another form of annuity, if approved by the trustees after a written request. Jordan was ineligible for a cash disbursement, a third option under the Plan, because the Plan forbade cash disbursements in excess of $30,000.
 
 
 8
 On January 30, 1979, Jordan requested a deferred joint and survivor annuity that would begin payments at age 56. Plan administrators informed Jordan on May 15, 1979, that he was required to explain his request in writing in order to receive an annuity that dispersed funds before age 65. The administrators also provided Jordan with a new election form and requested that he select a first and second choice for disbursement.
 
 
 9
 On October 18, 1979, Jordan attempted to roll over his profit sharing account into another retirement account. The Plan administrators denied disbursement in this fashion. Instead, they sent Jordan a new Plan Summary and election form on September 22, 1980. Jordan was instructed to select another form of distribution for his profit sharing account. Jordan never made a selection.
 
 
 10
 At some point in June of 1992, the Plan administrators forfeited Jordan's account. Jordan contacted the administrators and his account was reinstated on June 24, 1992. The Plan administrators credited the account with $44,822.30, the amount that was vested when Jordan retired from Thrifty. They evidently also provided Jordan with a new copy of the Plan, which had been amended in 1991 ("1991 Plan").[1] Jordan's request to credit his account with annual increases from the date of his separation from Thrifty was also denied.
 
 
 11
 The district court granted appellees' Rule 12(b)(6) motion to dismiss Jordan's amended complaint for failure to state a claim and denied Jordan further leave to amend his complaint. It explicitly based its holding on the 1976 Plan and concluded that the Plan did not authorize the distributions Jordan requested. Jordan timely appealed.
 
 I.
 
 12
 Dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is reviewed de novo. Stone v. Travelers Corp., 58 F.3d 434, 436-37 (9th Cir.1995); Franceschi v. Schwartz, 57 F.3d 828, 830 (9th Cir.1995). A Rule 12(b)(6) dismissal is proper only in the absence of either a cognizable legal theory or sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1990).
 
 
 13
 Here, Jordan contends that even though the Plan explicitly required distribution of a participant's vested earnings within 60 days of the end of the fiscal year during which separation from service took place, the Plan administrators failed to distribute his funds. In essence, Jordan asserts that he is entitled to relief because the Plan administrators violated the plain terms of the Plan. This is a valid claim under ERISA. See Eley v. Boeing Co., 945 F.2d 276 (9th Cir.1991).
 
 
 14
 However, Jordan alleged in his first amended complaint that it was because he remained a Plan participant, even after he retired from Thrifty, that he was entitled to performance in accordance with the Plan. Consequently, he brought his claim under 29 U.S.C. § 1132(a)(1), which provides relief to plan participants and beneficiaries for "benefits due under the terms of the plan." Id. This theory was untenable because Section 3.3 of the Plan forbade Plan membership after separation from service. Jordan therefore held no statutory rights as a participant that he could exercise or enforce after retirement. See Varity Corp. v. Howe, 116 S.Ct. 1065, 1079 (1996). As a result, the district court properly ruled that Jordan failed to state a claim upon which relief could be granted under this theory. See Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1984) (noting ERISA's purpose to protect contractually defined benefits and finding a lack of any reference in the statute or legislative history to an intention to authorize the recovery of extracontractual damages).
 
 II.
 
 15
 Nonetheless, Jordan's claim was not fatally flawed and his request for leave to amend his complaint should have been granted.
 
 
 16
 We review a denial of leave to amend for abuse of discretion. United States v. County of San Diego, 53 F.3d 965, 969 n. 6 (9th Cir.), cert. denied, 116 S.Ct. 183 (1995). Because leave to amend should be liberally granted, Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir.1994), the denial of such leave is "strictly reviewed in light of the strong policy permitting amendment." Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798 (9th Cir.1991) (citation omitted).
 
 
 17
 Four factors are commonly considered on a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, and futility of amendment. DCD Programs, Ltd. v. Leigton, 833 F.2d 183, 186 (9th Cir.1987). Here, there is no issue of bad faith, undue delay or possible prejudice. The district court evidently believed that leave to amend would have been futile. We disagree.
 
 
 18
 Assuming there was a default option for Plan participants who failed to elect a disbursement option, as we are required to do on this motion, the Plan may have required its administrators to purchase an annuity after separation from service for those retirees who failed to make an election. Consequently, Jordan may have been entitled to the timely purchase of an annuity within the year of his separation from Thrifty. It was not a right held only through Plan membership, but a right that matured upon retirement when Plan membership ceased. As a result, while 29 U.S.C. § 1132(a)(1) does not entitle Jordan to relief, Jordan may be entitled to equitable relief under § 1132(a)(3).
 
 
 19
 The Supreme Court recently interpreted and explained § 1132(a)(3) in Varity Corp., where the plaintiffs sued as individuals for breach of fiduciary duty. They could not recover under § 1132(a)(1) because they were no longer participants in the plan and therefore had "no benefits due" under the statute. 116 S.Ct. at 1079. The plaintiffs also could not sue under § 1132(a)(2) because they sought relief as individuals and not on behalf of the plan. Id. However, the Court concluded that they were entitled to "other appropriate equitable relief" to redress the breach of fiduciary duty under § 1132(a)(3). Id.
 
 
 20
 Here, accepting the facts alleged by Jordan as true, the Plan administrators may have violated the implied terms of the Plan and Jordan would be left without a remedy, unless equitable relief is granted under § 1132(a)(3). Although the Plan does not set forth an express default provision applicable to Jordan's case, it appears, under the facts alleged in this case, that one may be implied which required the administrators to select an option for Jordan within the year of his separation in the absence of his selecting an option that was acceptable to the administrators. See Plan § 7.2; Summary Description of Thrifty Corporation Profit Sharing Plan and Trust Part 1 ("If you are married, you will receive this form of benefit [a qualified joint and 50% survivor annuity], unless you elect another form of distribution available under the Plan, or unless your distribution benefit is less than $1,750"). Moreover, regardless of whether the Plan specifies a default option, the Trustee has a duty to distribute the benefit from a participant's profit sharing account "with reasonable promptness, but in no event more than 60 days after the close of the Fiscal Year in which the Participant ... has a Break in Employment unless he elects otherwise." Plan § 7.2. Refusal to grant leave to amend was therefore an abuse of discretion because an amendment would not have been futile.
 
 
 21
 If Jordan can prove that the appellees violated the terms of the Plan by failing to abide by the alleged implied default option for former participants who fail to elect a disbursement option, Jordan may be entitled to a constructive trust on the interest that the Plan earned while retaining and using his funds. Alternatively, those proceeds may be subject to an equitable lien until the Plan makes a "make-whole" purchase of an annuity that should have been purchased as a deferred annuity on the date of termination. Of course, the nature and form of the remedy would be subject to proof and left to the discretion of the district court.
 
 III.
 
 22
 Appellees raise a number of new defenses on appeal related to the applicable statute of limitations, waiver, and estoppel. These arguments are unavailing. They were not made in the district court and will not be considered for the first time on appeal. See In re Professional Inv. Properties, 955 F.2d 623, 625 (9th Cir.), cert. denied, 506 U.S. 818 (1992). Moreover, they depend on facts not currently developed at this stage of the proceedings such that it would be premature to rule on them. These defenses should be raised before the district court on remand, at the appropriate juncture.
 
 IV.
 
 23
 Finally, appellees argue the district court should be affirmed because the Plan grants its administrators wide discretion in managing the Plan, and the administrators did not abuse that discretion in administering Jordan's account. This contention is meritless. The Plan provision that the administrators allegedly did not follow does not grant discretion over disbursement, but requires distribution within a specified period of time. Consequently, the plea of "no abuse of discretion" will not save the Plan administrators here. See Nelson v. EG & G Energy Measurements Group, Inc., 37 F.3d 1384, 1389 (9th Cir.1994) (refusing to apply an abuse of discretion standard because "there [was] no appropriate exercise of discretion to which to defer").
 
 
 24
 AFFIRMED in part, REVERSED in part, and REMANDED. Jordan shall recover of appellees his costs on appeal.
 
 
 
 *
 The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The 1976 Plan controls this action. Although the 1991 Plan was attached to Jordan's initial complaint, his first amended complaint alleged claims only under the 1976 Plan